## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| YASMIN VARELA, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Yasmin Varela ("Plaintiff"), by and through undersigned counsel, hereby files this class action, individually and on behalf of all others similarly situated, against State Farm Mutual Automobile Insurance Company ("State Farm" or "Defendant") and alleges as follows:

### INTRODUCTION

1.    State Farm provides coverage to insureds throughout the State of Minnesota through its "State Farm Car Policy Booklet" which provides the terms and conditions of coverage.

2.    Plaintiff's policy at issue and those of the putative Class provide First Party Comprehensive, Collision, and UMPD coverages.

3.    These policies are contracts that State Farm unilaterally drafted and issued to insureds in the State of Minnesota.

567148.3

4.    When an insured is involved in an accident in which State Farms determines that his or her vehicle is determined a "total loss," the policy provides that State Farm will pay the insured the actual cash value of the vehicle minus any deductible. The policy does not define "actual cash value."

5.    State Farm surreptitiously engages in a practice by which it reduces the contractual amount it owes to the insured "to account for typical negotiation." Neither this term nor the practice is described anywhere in the policies.

6.    When State Farm issues these policies to its insureds, it knows at that time that if it determines an insured's vehicle is a total loss, it will apply a downward adjustment "to account for typical negotiation."

7.    This class action, brought on behalf of Plaintiff and all other similarly situated insureds in Minnesota who received a payment for the loss of a totaled vehicle from State Farm, challenges State Farm's improper scheme and uniform business practice of taking fictitious and arbitrary "typical negotiation" deductions in order to systematically undervalue total loss claims in Minnesota and illegally increase State Farm's own profits.

8.    State Farm is not authorized to take these downward "typical negotiation" deductions under either the governing insurance policy or under applicable Minnesota law.

9.    Plaintiff challenges the legality of the "typical negotiation" deductions taken across-the-board by State Farm on all Minnesota total loss claims to decrease total loss payments to State Farm insureds.  In doing so, Plaintiff seeks damages and injunctive and declaratory relief.

## JURISDICTION AND VENUE

10.     Plaintiff and all putative Class Members are citizens of the State of Minnesota. State Farm is an insurance company authorized to do business in the State of Minnesota, and, at all relevant times hereto, was engaged in the marketing, sale, and issuance of automobile insurance policies in the State of Minnesota

11.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1441 (a)-(b), and 1453. Plaintiff and the proposed Class Members are citizens of the State of Minnesota. Defendant is an Illinois corporation with its principal place of business in Bloomington, IL, and, at all times relevant hereto, was engaged in the business of automobile insurance.

12.     There are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

13.     Venue is proper in this Court under 28 U.S.C. § 1391, as the conduct giving rise to Plaintiff's claims occurred in this District. Defendant transacts business and resides in this District.

## PARTIES

14.     Plaintiff Yasmin Varela resides in Dakota County and is a citizen of the State of Minnesota. At all relevant times hereto, Plaintiff was contracted with State Farm for automobile insurance. On or about January 6, 2021, Plaintiff's insured vehicle, a 2013 Hyundai Elantra GLS 4D Sedan, was deemed a total loss.

15.     Defendant State Farm is an automobile insurance company that owns numerous offices throughout the United States, including the State of Minnesota. Defendant State Farm's corporate headquarters are located at One State Farm Plaza,

Bloomington, IL 61710. Defendant State Farm conducts business in Minnesota through insurance agents and other company personnel. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensive coverage.

## FACTUAL ALLEGATIONS

### State Farm's Improper Scheme and Uniform Business Practice Challenged Herein

16.    At all relevant times, Plaintiff maintained, and continues to maintain, an automobile insurance policy from State Farm. A copy of that policy and declarations page is attached as **Exhibit A** hereto.

17.    Under the terms of State Farm's automobile insurance policies with Plaintiff and the putative Class, when a policyholder files a claim for loss caused to a covered vehicle, the contract gives State Farm the option to either: (a) pay the cost to repair the vehicle minus any deductible; or (b) pay the vehicle's (pre-accident) "actual cash value," minus any applicable deductible. Ex. A at 32.

18.    If State Farm determines that a vehicle is a "total loss"—meaning that the cost of repairs would exceed the vehicle's value—it then pays the actual cash value of the vehicle, minus any applicable deductible.

19.    The term "actual cash value" is not defined in the contract.

20.    Plaintiff's State Farm automobile insurance policy is a form contract drafted and utilized by State Farm and its terms are materially identical to the policies of the putative Class Members.

21.    Plaintiff owned a 2013 Hyundai Elantra GLS insured by State Farm that was deemed a total loss on or about January 6, 2021. As a result, Plaintiff filed a claim pursuant

to the operative State Farm policy. On or about January 7, 2021, State Farm determined that Plaintiff's vehicle was a covered vehicle and exercised its option under the policy to declare it a total loss.

22.     To determine the actual cash value of Plaintiff's vehicle, State Farm used an Autosource valuation report prepared by Audatex, a third-party vendor that State Farm contracts with for this purpose. A copy of the valuation report used and relied upon by State Farm is attached as **Exhibit B** hereto.

23.     Audatex uses a software program called "Autosource Market-Driven Valuation" ("AMDV") to calculate the value of a total loss vehicle. The AMDV software was designed for use by insurance companies and is not an objective industry source used to determine the actual retail cost of used cars.

24.     State Farm purports to determine the actual cash value of total loss vehicles through Audatex's AMDV software system. The Autosource system identifies the price of comparable vehicles listed for sale online in the relevant market. The report then adjusts the prices of those comparable vehicles listed for sale online to account for differences in equipment, mileage, and vehicle configuration, as would be expected.

25.     In addition, however, the valuation reports used by State Farm make a further downward adjustment to each comparable vehicle for a non-itemized, so-called "typical negotiation" deduction to purportedly "account for typical negotiation." State Farm, in conjunction with Audatex, then uses the so-reduced price for each of the four comparable vehicles to determine the value of the insured's vehicle, as seen in the following image from the valuation report used by State Farm with respect to Plaintiff's claim:

**Comparable Vehicle Details**

The following information provides the details for the vehicles used to calculate the Autosource Value. The selling price may be substantially less than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables price.

---

| 1 | 2013 Hyundai Elantra GLS 4D Sedan | 5NPDH4AE1DH433783 | $7,815 |

Stock# 8X016A. 54612 Miles. 4 Cylinder 1.8 Engine, 6 Speed Manual, Preferred Package 2, Auxiliary Audio Input, Anti-Lock Brakes, Air Conditioning, Alarm System, Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Electric Steering, Fog Lights, Head Airbags, Halogen Headlights, Heated Front Seats, Intermittent Wipers, IPOD Control, Illuminated Visor Mirror, Keyless Entry System, Lighted Entry System, MP3 Decoder, Overhead Console, Pwr Accessory Outlet(s), Power Brakes, Power Door Locks, Power Moonroof, Power Windows, 2nd Row Head Airbags, Rem Trunk-L/Gate Release, Side Airbags, Stability Cntrl Suspensn, Split Folding Rear Seat, Strg Wheel Radio Control, Tachometer, Trip Computer, Traction Control System, Tinted Glass, Tire Pressure Monitor, Tilt & Telescopic Steer, USB Audio Input(s), Velour/Cloth Seats, Wireless Phone Connect, XM Satellite Radio, Child Safety Locks.

Offered for sale by Freeway Ford, Inc. in Minneapolis, MN, (952) 888-9481. Vehicle information by Vast on 12/29/20.

The advertised price of $8,495 was adjusted to account for typical negotiation.

---

| 2 | 2013 Hyundai Elantra GLS 4D Sedan | 5NPDH4AE9DH366883 | $8,278 |

Stock# 5AH788T. 66471 Miles. 4 Cylinder 1.8 Engine, 6-Speed Automatic, Preferred Package 2, Auxiliary Audio Input, Anti-Lock Brakes, Air Conditioning, Alarm System, Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Electric Steering, Fog Lights, Head Airbags, Halogen Headlights, Heated Front Seats, Intermittent Wipers, IPOD Control, Illuminated Visor Mirror, Keyless Entry System, Lighted Entry System, MP3 Decoder, Overhead Console, Pwr Accessory Outlet(s), Power Brakes, Power Door Locks, Power Windows, 2nd Row Head Airbags, Rem Trunk-L/Gate Release, Side Airbags, Stability Cntrl Suspensn, Split Folding Rear Seat, Strg Wheel Radio Control, Tachometer, Trip Computer, Traction Control System, Tinted Glass, Tire Pressure Monitor, Tilt & Telescopic Steer, USB Audio Input(s), Velour/Cloth Seats, Wireless Phone Connect, XM Satellite Radio, Child Safety Locks.

Offered for sale by Walser Experienced Autos in Hopkins, MN, (952) 653-3540. Vehicle information by Vast on 10/12/20.

The advertised price of $8,998 was adjusted to account for typical negotiation.

---

| 3 | 2013 Hyundai Elantra GLS 4D Sedan | KMHDH4AE7DU018095 | $7,349 |

Stock# 700942. 100817 Miles. 4 Cylinder 1.8 Engine, 6-Speed Automatic, Preferred Package 2, Auxiliary Audio Input, Anti-Lock Brakes, Air Conditioning, Alarm System, Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Electric Steering, Fog Lights, Head Airbags, Halogen Headlights, Heated Front Seats, Intermittent Wipers, IPOD Control, Illuminated Visor Mirror, Keyless Entry System, Lighted Entry System, MP3 Decoder, Overhead Console, Pwr Accessory Outlet(s), Power Brakes, Power Door Locks, Power Moonroof, Power Windows, 2nd Row Head Airbags, Rem Trunk-L/Gate Release, Side Airbags, Stability Cntrl Suspensn, Split Folding Rear Seat, Strg Wheel Radio Control, Tachometer, Trip Computer, Traction Control System, Tinted Glass, Tire Pressure Monitor, Tilt & Telescopic Steer, USB Audio Input(s), Velour/Cloth Seats, Wireless Phone Connect, XM Satellite Radio, Automatic Transmission, Cabin Air Filter.

Offered for sale by Barnett Chrysler Jeep Kia in Saint Paul, MN, (651) 482-6100. Vehicle information by *Leading Internet Auto Site on 10/12/20.

The advertised price of $7,988 was adjusted to account for typical negotiation.

---

| 4 | 2013 Hyundai Elantra GLS 4D Sedan | 5NPDH4AE5DH364256 | $7,355 |

Stock# P29128B. 106096 Miles. 4 Cylinder 1.8 Engine, 6-Speed Automatic, Preferred Package 2, Auxiliary Audio Input, Anti-Lock Brakes, Air Conditioning, Alarm System, Aluminum/Alloy Wheels, Bucket Seats, Cruise Control, AM/FM CD Player, Center Console, Dual Airbags, Rear Window Defroster, Heated Power Mirrors, Daytime Running Lights, Electric Steering, Fog Lights, Head Airbags, Halogen Headlights, Heated Front Seats, Intermittent Wipers, IPOD Control, Illuminated Visor Mirror, Keyless Entry System, Lighted Entry System, MP3 Decoder, Overhead Console, Pwr Accessory Outlet(s), Power Brakes, Power Door Locks, Power Moonroof, Power Windows, 2nd Row Head Airbags, Rem Trunk-L/Gate Release, Side Airbags, Stability Cntrl Suspensn, Split Folding Rear Seat, Strg Wheel Radio Control, Tachometer, Trip Computer, Traction Control System, Tinted Glass, Tire Pressure Monitor, Tilt & Telescopic Steer, USB Audio Input(s), Velour/Cloth Seats, Wireless Phone Connect, XM Satellite Radio, Power Outlet.

Offered for sale by White Bear Lincoln in Saint Paul, MN, (651) 483-2631. Vehicle information by *Leading Internet Auto Site on 11/17/20.

The advertised price of $7,995 was adjusted to account for typical negotiation.

---

567148.3

Ex. B at 5-6.

26.     For Plaintiff, "typical negotiation" deductions in the amounts of $680, $720, $639, and $640, respectively, were applied to each of the four comparable vehicles. Ex. B at 5-6.  Through Autosource, State Farm applies an arbitrary, invalid, and baseless "typical negotiation" downward deduction to the comparable vehicles before determining the total loss payment that State Farm will make.

27.     As explained more herein, these "typical negotiation" deductions are arbitrary and unsupportable. State Farm represents that the "typical negotiation" deductions reflect the amount for which the car dealer will actually sell the vehicle. This is false. Neither State Farm nor any of its agents speak with any of the car dealers who they represent are willing to reduce the price of the comparable vehicle. State Farm relies simply on speculation about the price comparable vehicles might sell for if someone was able to negotiate a lower price than the seller requested, despite that State Farm has no apparent reason to believe that this comparable vehicle was ever available sold at that price.

28.     The parties' insurance contract does not mention the "typical negotiation" deduction, let alone authorize it. Likewise, there is no authorization under Minnesota's governing insurance statutes and regulations permitting these arbitrary "typical negotiation" deductions.

29.     State Farm provides no data or explanation of industry practices in its valuation reports to support any "typical negotiation" deductions, much less one at 8% - 9% as in Plaintiff's report. The only stated reason given for its downward adjustment to the list price of the comparable vehicles is: "The selling price may be substantially less

than the asking price. Where indicated, the asking price has been adjusted to account for typical negotiation according to each comparables [sic] price." Ex. B at 5. However, as explained more herein, an 8% - 9% reduction on a used vehicle's internet price is not typical and does not reflect market realities.

30.    State Farm unreasonably buries its "typical negotiation" deduction at the back of the valuation report in an effort to obscure this deduction. For example, the report begins with a "Valuation Detail" section that purports to display the price of each comparable vehicle and then to itemize all "adjustments." Ex. B at 1-3. Although this section displays any adjustments for mileage, options and equipment, it does not disclose the "typical negotiation" deduction. Instead, the displayed "Price" is not the actual price data collected by State Farm and Audatex, but rather, it is that price after the application of the downward "typical negotiation" deduction. In addition, the "Market Overview" section explains the mileage, options and equipment adjustments but makes no mention of the "typical negotiation" deductions. Ex. B at 5.

31.    Rather, the "typical negotiation" deductions are hidden at the back of the report in paragraphs detailing the packages and options of the comparable vehicles in a section titled "Comparable Vehicle Details." *Id.* However, even this section displays a bolded price at the top for each comparable vehicle, only explaining in non-bolded typeface at the bottom that the bolded price is not the actual price data for the vehicle. Stated otherwise, the Autosource reports do not even itemize the deduction from the advertised price, so the insured can only determine how much was deducted from their vehicle valuation by calculating the difference between advertised price and the price

bolded on the top right corner of each comparable vehicle entry and dividing that figure by the total number of comparable vehicles. *See* Ex. B at 5-7.

32.    The "typical negotiation" downward deductions result in the use of purported values for the comparable vehicles used in valuating the insured's total loss vehicle that are lower than what those advertised comparable vehicles actually sell for in real life.

33.    For Plaintiff, the valuation report used these "typical negotiation" deductions to reduce the value of each comparable vehicle by 8%. Consequently, this improperly reduced Plaintiff's recovery under her policy by these percentages. For Plaintiff, the improper "typical negotiation" deductions reduced her ultimate payment from State Farm by $669.75.

## The "Typical Negotiation" Deductions Are Arbitrary, Unsupported, and Inconsistent with Market Realities.

34.    The internet has changed the used car industry. Consumers now comparison shop online. In this new market, used car dealers price their cars to market and utilize sophisticated pricing and inventory management tools to remain competitive. Thus, during the class period, it would be atypical for a consumer to negotiate a discount off a car's internet advertised price. Despite these new market realities, State Farm systematically pays insureds less than the actual cash value of the total loss vehicles by applying the negative "typical negotiation" deductions based upon the antiquated and erroneous assumption that the typical insured will negotiate a discount off the online market price.

These deductions neither represent consumer purchasing behavior nor reflect market realities.

35.    In today's digital area, list prices by dealers on the internet are priced-to-market (i.e., a market appraisal precedes the pricing) without being inflated above market value to reflect the intense competition in the context of internet pricing and comparison shopping. Thus, a deduction of this nature from a vehicle advertised online would be uncommon.

36.    State Farm applies the "typical negotiation" deductions without contacting the identified dealerships or sellers, or even considering whether the car dealer ever actually discounts its price from the online listed price. By applying a universal percentage-based "typical negotiation" deduction, State Farm ignores the fact that it is now the practice in the used car market to avoid price negotiation by implementing "no haggle" pricing, especially as to internet-posted prices.[1]

37.    In addition, in light of the COVID-19 pandemic and its related supply chain problems with parts such as electronics and microchips for vehicles, used cars have been

---

[1] *See, e.g.*, https://www.autonationlincolnclearwater.com/autonation-one-price.htm ("Not only is our no-haggle price low, it's guaranteed."); https://www.carmax.com/about-carmax ("[O]ur 'no-haggle' prices transformed car buying and selling from a stressful, dreaded event into the honest, straightforward experience all people deserve.").

selling for an all-time high premium, with sales prices typically increasing from the posted price, if it changes at all.[2]

38.     Even setting COVID-19 aside, it was and is extremely rare for car dealers to sell a vehicle for less than the online listed price and, far more often than not, cars are sold for more than the online listed price. This is because online car shoppers are sophisticated consumers who are comparing the online listed price of a vehicle across multiple dealers in a broad geographic region. As such, car dealers list what is essentially the "best offer" or lowest possible price at which they can still maintain a profit margin, and do not negotiate from that price. Online shoppers can buy the car or not—what they generally cannot do is negotiate the price down over email or telephone.

39.     For used cars sold in-person, where the price listed on the lot is not easily comparable to multiple other car dealers, cars are often sold for higher—sometimes far higher— than their online listed price.

40.     Worse, State Farm knows this to be the case. State Farm, directly or through its agents and vendors, has access to data that demonstrates it is far more likely that a given vehicle will be sold for more than its online listed price than it is that it will be sold for less than its listed price. Despite such knowledge, State Farm systematically and improperly represents that every single vehicle—every single total loss claim—is likely to be sold for a flat percentage less than its listed online price. If State Farm's valuation

---

[2] *See* https://www.cnbc.com/2021/08/07/used-car-prices-to-stay-high-until-automakers-fix-production-issues.htmll https://abc7chicago.com/car-chip-shortage- 2021-prices-auto-gm-closes-factories/11005980/.

was based in actual fact and market reality of what is "likely" to happen, State Farm would increase the amount from the online listed price.

41. Upon information and belief, State Farm's "typical negotiation" deduction is a blanket percentage reduction of the selling price of a comparable vehicle based on the listing price. Rather than basing the adjustment on any tangible features of the available vehicle which may relate to consumer negotiations, the "typical negotiation" is arbitrarily applied as a universal percentage reduction to any vehicle in a given price range.

42. Moreover, that the "typical negotiation" deduction is arbitrary is evidenced by the fact the valuation report does not supply any factual basis supporting the amount of the deduction or the decision to apply the deduction in the first place. To be sure, negotiation is more art than science. The result often depends on a myriad of factors, including the skill, personality, and goals of the respective parties. It is unclear which of those factors (if any) State Farm used to quantify the bogus "typical negotiation."

43. Although the price for each of the four comparable vehicles reflected on Plaintiff's valuation report had a different listed price, the report does not explain the percentage deduction, nor does it provide any itemization, thus further reinforcing the arbitrariness of this bogus deduction.

44. Further, State Farm has no information on the condition of the advertised vehicles online, nor any information surrounding any dealer's willingness to negotiate price reductions or information related to any insureds negotiating abilities.

45. As previously alleged, the "typical negotiation" deduction is a blanket, across-the-board percentage reduction to any comparable vehicle in a given price range,

rather than basing the deduction on any tangible features of the comparable vehicle which may relate to consumer negotiations.

46.    State Farm unilaterally chooses to include the "typical negotiation" deductions in the Autosource valuation reports it utilizes. Upon information and belief, State Farm instructs Audatext as to what specific data to include in the report as the basis for the valuation, including whether to apply a "typical negotiation" deduction to the comparable vehicles. Upon information and belief, State Farm does not instruct Autosource to apply "typical negotiation" deductions to comparable vehicles in all states in which State Farm or its affiliates operate.

47.    The impropriety and arbitrariness of State Farm's "typical negotiation" deductions are further demonstrated by the fact that Audatex's primary competitor in providing valuation reports to insurance companies—CCC Intelligence Solutions—does not apply "typical negotiation" deductions in this manner. Instead, CCC Intelligence Solutions uses list prices.

48.    The inclusion of this significant downward adjustment is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement have limited time to search out the illusory opportunity to obtain the below market deal that State Farm assumes always exists without any explanation or support.

**The Uniform Business Practice Violates the Insurance Policy, As Well As Applicable Minnesota Law Incorporated Into The Policy.**

49.    State Farm's improper scheme and uniform business practice of taking "typical negotiation" deductions to undervalue total loss claims is not authorized by the standard form policy or applicable Minnesota law.

50.    The conduct described herein violates the standard form policy language requiring State Farm to pay "actual cash value" of total loss claims minus only the deductible. State Farm's practice of systematically taking "typical negotiation" deductions is not reflective of market practices or market values, and results in an artificially lower market value of the loss vehicle and resulting settlement amount. That is, State Farm breaches its contractual obligation to pay "actual cash value" by regulation and instead uses an invalid, arbitrary, and erroneous adjustment that significantly underpays total loss claims.

51.    Further, the conduct described herein violates the Minnesota total loss regulation, Minn. Stat. § 72A.201, subd. 6. That regulation provides that it is an "unfair settlement practice" if an insurer "fail[s] to offer one of the following methods of settlement:

(a) comparable and available replacement automobile, with all applicable taxes, license fees, at least pro rata for the unexpired term of the replaced automobile's license, and other fees incident to the transfer or evidence of ownership of the automobile paid, at no cost to the insured other than the deductible amount as provided in the policy;

(b) a cash settlement based upon the actual cost of purchase of a comparable automobile, including all applicable taxes, license fees, at least pro rata for

the unexpired term of the replaced automobile's license, and other fees incident to transfer of evidence of ownership, less the deductible amount as provided in the policy. The costs must be determined by:

(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or

(ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or

(iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured[.]

52.    The Minnesota total loss regulation requires that if an insurer calculates actual cash value by looking to comparable vehicles, it must use "the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area." The AMDV indicates that Plaintiff's automobile was available in the area, as do all AMDV reports.  The "typical negotiation" deduction taken by State Farm relies on prices that were never available to consumers at any time. The valuations resulting from applying the "typical negotiation" deduction are not the actual cost to purchase a comparable vehicle. Because State Farm did not base its payment on costs of comparable vehicles actually available in the local

area, it violated Minnesota's total loss regulation and thereby breached its contract with the Plaintiff and other Class Members.

53.    As previously alleged, the term "actual cash value" is not defined in the contract.  Under Minn. Stat. § 72A.201, subd. 6, if an insurance policy provides for the adjustment and settlement of total loss claims on the basis of actual cash value, the insurer must use the statute's proscribed method for determining actual cash value.  The conduct described herein *also* violates applicable Minnesota law governing the adjustment and settlement of total loss claims based on actual cash value, which law is incorporated as a statutory floor into State Farm's insurance contracts in Minnesota.

54.    State Farm's conduct violates Minn. Stat. § 72A.201, subd. 6(b)(i), in that its adjustment and settlement of total loss claims is *not* based on "the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area."  Rather, in taking "typical negotiation" deductions, State Farm is guessing or speculating, with no supporting or verifiable data, what a comparable vehicle may sell for at some point in the future.  And the "typical negotiation" deduction taken by State Farm relies on prices that were *never* available to consumers at *any* time. The valuations resulting from applying the "typical negotiation" deduction are not the actual cost to purchase a comparable vehicle. Because State Farm did not base its payment on "the cost of a comparable automobile" that "is available" (advertised price) in the "local market," it violated Minnesota's total loss regulation and thereby breached its contract with the Plaintiff and other Class Members.

55.    Additionally, State Farm's conduct violates the requirement under Minn. Stat. § 72A.201, subd. 6(b)(iii), that "any settlement or offer of settlement which deviates

from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured[.]"  State Farm never explains at all, much less in detail or with documentation, how it calculates "typical negotiation" deductions, or why the calculation is always 8%.  State Farm instead makes arbitrary deductions based on antiquated and erroneous assumptions about purchasing behavior that is at odds with market realities, and does not explain document or justify them in any way.  As a result, State Farm has violated the minimum requirements of Minnesota's total loss regulation.

56.    Plaintiff does not assert a private cause of action under Minn. Stat. § 72A.201, subd. 6.  Rather, Plaintiff contends, in part, that Minnesota's total loss regulation is incorporated into the policy by operation of law and by virtue of the policy's conformity provision, and that State Farm has therefore breached the contract by, among other things, violating Minnesota's total loss regulation.

57.    It is proper to look to the Minn. Stat. § 72A.201, subd. 6 in construing the term "actual cash value," an undefined term in the policy, and determining whether State Farm fulfilled its contractual duty. *See, e.g., Lobeck v. State Farm Mut. Auto. Ins. Co*., 582 N.W.2d 246, 249 (Minn. 1998) ("General principles of contract interpretation apply to insurance policies. . . . When insurance policy language is clear and unambiguous, the language used must be given its usual and accepted meaning. . . . As long as an insurance policy does not omit coverage that is required by law and the policy does not violate applicable statutes, the extent of the insurer's liability is governed by the contract entered into. Therefore, we will enforce West Bend's unambiguous policy exclusion unless we determine that it omits coverage required by law or violates an

applicable statute." (internal quotation marks and citations omitted)); *see also Coker v. American Guarantee and Liability Ins. Co.*¸825 F.3d 1287, 1293 (11th Cir. 2016) ("However, an insurance policy that is not in compliance with the Georgia Insurance Code shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with [the Code]").

58.     Accordingly, when adjusting and settling total loss claims based upon actual cash value in Minnesota, State Farm was obligated to abide by the requirements of Minn. Stat. § 72A.201, subd. 6. Anything less would, in essence, require a construction of the policy in a manner contrary to Minnesota law.

59.     In addition, State Farm's "typical negotiation" deductions are clearly an "unfair settlement practice" because they do not conform with Minn. Stat. § 72A.201, subd. 6.  While that statute does not provide a private right of action, the Minnesota Consumer Fraud Act does include a private right of action for unfair or deceptive practices under Minn. Stat. § 325F.68 and State Farm's conduct was designed to conceal material information from Plaintiff and the Class.

60.     Plaintiff and each member of the class were damaged by Defendant's application of the "typical negotiation" deductions because they were not paid the actual cash value they would have received had Defendant applied proper methodologies and appraisal standards.

## CLASS ACTION ALLEGATIONS

61.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks certification of a Class defined as follows:

> All State Farm insureds (1) with Minnesota first-party personal line policies issued in Minnesota, (2) who received compensation, within six (6) years of

the filing of this action, for the total loss of their own vehicles under their First Party (Comprehensive, Collision, and UMPD) coverages, and (3) whose claim was settled using the amount determined by a total loss valuation from Audatex based on the value of comparable vehicles which took a deduction or adjustment for "typical negotiation."

62.    Excluded from the Class are: (a) State Farm and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

63.    The Class can be readily identified through records obtained from State Farm and/or Audatex related to the total loss claims of the proposed Class.

64.    Numerosity. The Class is so numerous that individual joinder is impracticable. Upon information and belief, State Farm has at least a 21% market share in Minnesota, the largest in the state. On information and belief, State Farm applies the "typical negotiation" deduction to all total loss claims in Minnesota. The Class therefore contains at least thousands of members.

65.    Typicality. Plaintiff's claims are typical of the Class she seeks to represent. Like all Class Members, State Farm applied a typical negotiation deduction to Plaintiff's total loss claim and thereby reduced her final payment. Plaintiff's claims arise out of the same conduct and are based on the same legal theories as those of the putative Class Members.

66.    Adequacy of Class Representative. Plaintiff will fairly and adequately protect the interests of the Class. She is aware of her fiduciary duties to putative Class

Members and is determined to faithfully discharge her responsibility. Plaintiff's interests are aligned with (and not antagonistic to) the interests of the Class.

67.    Adequacy of Counsel. In addition, Plaintiff has retained competent counsel with considerable experience in class action and other complex litigation. Plaintiff's counsel have done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class.

68.    Commonality and Predominance. This case presents numerous questions of law and fact with answers common to the Class that predominate over questions affecting only individual Class Members. Those common questions include:

a.    Whether the parties' contract allowed State Farm to apply a "typical negotiation" deduction to total loss claims;

b.    Whether State Farm's use of a "typical negotiation" deduction complied with . Minn. Stat. § 72A.201, subd. 6;

c.    Whether State Farm's use of a "typical negotiation" deduction breached the implied covenant of good faith and fair dealing;

d.    Whether State Farm's deceptive acts and improper practices injured Plaintiff and members of the Class;

e.    Whether Plaintiff and the Class are entitled to compensatory damages and/or equitable relief, and if so, the calculation of damages;

f.    Whether State Farm has been unjustly enriched at the expense of Plaintiff and other Class Members as a result of its scheme and improper business practice;

g.    Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief as requested herein; and

h.    Whether Plaintiff and the Class are entitled to recovery of expenses of litigation and attorneys' fees pursuant to Minn. Stat. § 8.31, subd. 3a.

69.    Plaintiff reserves her right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses, or modified in any other way.

70.    Superiority. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

71.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein, and brings this claim individually and on behalf of the Class.

72.     Plaintiff and the Class entered an insurance contract with State Farm.

73.     Plaintiff and the Class have performed their duties under the contract in all material respects.

74.     By applying the "typical negotiation" deduction to total loss claims filed by Plaintiff and the Class, State Farm breached its duties under the terms of the contract in at least three ways.

75.     *First*, State Farm breached an express term of the contract. Under the express terms of the contract, State Farm had a duty to pay Plaintiff and the putative Class the "actual cash value" (minus any applicable deductible) of their vehicles that State Farm determined to be a total loss.

76.     State Farm itself determined that Plaintiff and the putative Class had suffered a total loss of a covered vehicle.

77.     When State Farm paid Plaintiff and the Class, however, it took a deduction for "typical negotiation."

78.     A "typical negotiation" deduction is not a legitimate component of actual cash value, including but not limited to because it is arbitrary, not based on objective or verifiable information, and has no basis in the realities of the marketplace.

79.     State Farm therefore breached an express term of the contract.

80.     *Second*, State Farm violated Minnesota's statute governing the adjustment and settlement of total loss claims on the basis of actual cash value, Minn. Stat. § 72A.201, subd. 6, which is incorporated into the policy as a matter of law.

81.     As described previously herein, State Farm has violated Minnesota's total loss regulation, and hence breached its contract with its insureds, by: (1) not basing its settlement of total loss claims on the basis of actual cash value upon "the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area;" (2) adjusting for the "typical negotiation" cost in addition to the statutorily enumerated permissible adjustments, which are limited to mileage, condition, and options; (3) failing to explain at all, much less in detail or with documentation, how it calculates "typical negotiation" deductions, or why the calculation is always 8%; and (4) failing to base its offer on dealer sales prices that "is available" to consumers as mandated by the Minnesota total loss regulation.

82.     *Third*, State Farm breached the implied covenant of good faith and fair dealing, which is implied and incorporated into every contract, including insurance policies, in the state of Minnesota.

83.     The term "actual cash value" is undefined in the parties' insurance contract that State Farm drafted, and its meaning was not resolved explicitly by the parties.

84.     The parties' contract also does not mention or discuss the "typical negotiation" deduction.

85.    State Farm thus had a duty to act reasonably and refrain from taking opportunistic advantage of Plaintiff and the putative Class when determining the actual cash value of their vehicles.

86.    When determining the actual cash value of vehicles belonging to Plaintiff and the putative Class, State Farm took advantage of them and frustrated their reasonable expectations under the contract by applying a "typical negotiation" deduction that is arbitrary, not based on objective or verifiable information, and has no basis in industry customs or the realities of the marketplace.

87.    State Farm therefore breached the implied covenant of good faith and fair dealing.

88.    As a result of State Farm's breaches of contract, Plaintiff and the Class have suffered damages. The "typical negotiation" deduction necessarily reduced their final payments.

89.    Therefore, State Farm is liable for breach of contract.

90.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre¬judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

**SECOND CAUSE OF ACTION**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

91.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein, and brings this claim individually and on behalf of the Class.

92.    As noted above, every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties

do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

93.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

94.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the actual cash value of an insured's total-loss vehicle. State Farm, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of its total-loss payments to insureds, as alleged herein.

95.    State Farm also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured shall be provided the information contained in all quotations prior to settlement; or (iii) any

settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." Minn. Stat. § 72A.201 subd.6.

96.     As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*: (1) intentionally applying "typical negotiation" deductions to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles; (2) failing to pay insureds the actual cash value of their total-loss vehicles; (3) Interpreting the terms and conditions of its insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the actual cash value of their total-loss claims; and (4) inventing spurious grounds for undervaluing total-loss claims that are hidden, not specific in dollar amount allocation, not adequately explained, and unreasonable.

97.     Defendant's breaches of the covenant of good faith and fair dealing have caused damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a "typical negotiation."

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

98.     Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein, and brings this claim individually and on behalf of the Class.

99.      Plaintiff and the putative Class assert this claim for unjust enrichment in alternative to the breach of contract claim. Plaintiff pleads this claim separately as well as in the alternative as without such claims she would have no adequate legal remedy.

100.     State Farm profits from the "typical negotiation" deduction because it is able to retain more money.

101.     By accepting a payment with that deduction, Plaintiff and the putative Class conferred a benefit upon State Farm.

102.     Plaintiff and the putative Class could not have known they were conferring such a benefit on State Farm because the "typical negotiation" deduction was not mentioned, was not itemized, and its factual basis (if any) was not disclosed at the time of payment

103.     State Farm was aware of that benefit.

104.     It would be unjust for State Farm retain that benefit.

105.     Therefore, State Farm is liable to Plaintiff and the Class for unjust enrichment and must disgorge its ill-gotten gains. Plaintiff and the Class members are entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT

106.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein, and brings this claim individually and on behalf of the Class.

107.    Defendant, Plaintiff, and the Class members are "persons" within the meaning of Minn. Stat. § 325F.68.

108.    The Minnesota Prevention of Consumer Fraud Act ("MCFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1.

109.    As alleged herein, State Farm, through its agents, employees, and/or subsidiaries, violated the MCFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" deduction to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

110.    State Farm also failed to comply with Minnesota law, which requires insurance companies to determine the actual cost for cash settlements by "(i) the cost of a comparable automobile, adjusted for mileage, condition, and options, in the local market area of the insured, if such an automobile is available in that area; or (ii) one of two or more quotations obtained from two or more qualified sources located within the local market area when a comparable automobile is not available in the local market area. The insured

shall be provided the information contained in all quotations prior to settlement; or (iii) any settlement or offer of settlement which deviates from the procedure above must be documented and justified in detail. The basis for the settlement or offer of settlement must be explained to the insured." Minn. Stat. § 72A.201 subd.6.  The statute declares failure to comply with this section an "unfair settlement practice."

111.    By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary "typical negotiation" deduction to the payout for the total loss of Plaintiff and the Class's vehicles, and its failure to comply with Minnesota law, as detailed above, State Farm engaged in one or more unfair or deceptive business practices prohibited by the MCFA.

112.    Defendant's misrepresentations and omissions regarding its application of an arbitrary "typical negotiation" deduction were made to Plaintiff and the Class members in a uniform manner.

113.    State Farm's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary "typical negotiation" deduction in order to reduce the amount of Defendant's total-loss payments to its insureds.

114.    The facts regarding Defendant's use of the "typical negotiation" deduction that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were,

in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to State Farm's insurance coverage.

115.    Plaintiff and Class members had no way of discerning that State Farm's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

116.    State Farm had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the MCFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its use of a "typical negotiation" deduction, and to explain how such a deduction was calculation, the basis for its application, and to itemize its compliance with Minnesota law because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

117.    Plaintiff and the Class members were aggrieved by Defendant's violations of the MCFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of its "typical negotiation" deduction, including that the deduction is arbitrarily selected and applied, in

an inconsistent manner designed to decrease State Farm's total-loss payments under the Policy.

118.    Plaintiff and the Class members purchased State Farm insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of actual cash value in the event of a total loss and State Farm's use of the "typical negotiation" deduction.

119.    Had State Farm not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant, or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

120.    Defendant's violations of the MCFA present a continuing risk of future harm to Plaintiff and the Class members.

121.    Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the MCFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the MCFA and Minn. Stat. § 8.31, subd. 3a.

## FIFTH CAUSE OF ACTION
## DECLARATORY AND INJUNCTIVE RELIEF

122.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein, and brings this claim individually and on behalf of the Class.

123.    A dispute between a Plaintiff and the putative Class and State Farm is before this Court under Minnesota law concerning the construction of the auto insurance

policies issued by State Farm, conformance of those policies with Minnesota state law, and whether State Farm's use and application of "typical negotiation" deductions violates the policy and the regulation.

124.    State Farm's unlawful scheme and uniform business practice as described herein are ongoing. Plaintiff remains a current insured of State Farm, and State Farm continues to apply "typical negotiation" deductions. Accordingly, as detailed above, State Farm has violated, and continues to violate, Minnesota's total loss regulation and the standard form insurance policy by applying "typical negotiation" deductions to reduce the valuation of Plaintiff's total-loss vehicle.

125.    Plaintiff, therefore, seeks a declaration of the rights and liabilities of the parties herein.  Specifically, Plaintiff seeks: (1) a declaration on behalf of herself and the Class she seeks to represent that State Farm's application of "typical negotiation" deductions violates the standard form policy and Minn. Stat. § 72A.201, subd. 6, and (2) appropriate injunctive, equitable and monetary relief based on and flowing from the declaration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A. An order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.  An order declaring that State Farm's use of a "typical negotiation" deduction is unlawful and enjoining State Farm from engaging in any further unlawful conduct;

C.  An award of damages (including actual, compensatory, statutory, and punitive, as provided by law), to Plaintiff and the Class in an amount to be determined at trial, plus interest, in accordance with law;

D.  Restitution or disgorgement of Defendant's ill-gotten gains;

E.  Appropriate preliminary and/or final injunctive or equitable relief against the conduct of Defendant's described herein;

F.  An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees and reimbursement of litigation expenses pursuant to Minn. Stat. § 8.31, subd. 3a or otherwise provided by law; and

G.  An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 15, 2022                    Respectfully submitted,

                                        **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

                                        */s/ Kate M. Baxter-Kauf*
                                        Karen Hanson Riebel (MN # 0219770)
                                        Kate M. Baxter-Kauf (MN # 392037)
                                        David W. Asp (MN # 344850)
                                        100 Washington Avenue South
                                        Suite 2200
                                        Minneapolis, MN 55401

Telephone:   (612) 339-6900
Facsimile:   (612) 339-0981
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
dwasp@locklaw.com

**THE FINLEY FIRM, P.C.**

/s/ *J. Benjamin Finley*
J. Benjamin Finley (*pro hac* forthcoming)
MaryBeth V. Gibson (*pro hac* forthcoming)
N. Nickolas Jackson (*pro hac* forthcoming)
Piedmont Center
3535 Piedmont Rd.
Building 14, Suite 230
Atlanta, GA  30305
Telephone: (404) 978-6971 (Direct)
Fax: (404)-320-9978
bfinley@thefinleyfirm.com
mgibson@thefinleyfirm.com
njackson@thefinleyfirm.com

**IRBY LAW, LLC**

/s/ R. Brent Irby
R. Brent Irby (*pro hac* forthcoming)
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 335-9102
Facsimile: (866) 618-4629
brent@irbylaw.net

**SAWICKI & PHELPS, P.A.**

/s/ *Paul J. Phelps*
Paul J. Phelps (MN #185073)
5758 Blackshire Path
Inver Grover Heights, MN 55076
Telephone:   (651) 730-6900
Facsimile:   (651) 730-8110
pphelps@mnlawyers.com

*Attorneys for Plaintiff and the Class*