UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| YASMIN VARELA, | |
| Plaintiff, | Civil No. 22-970 (JRT/DTS) |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| Defendant. | |

David W. Asp, Karen Hanson Riebel, Kate M. Baxter-Kauf, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; James Benjamin Finley, MaryBeth V. Gibson, N. Nickolas Jackson, **THE FINLEY FIRM, P.C.**, 200 Thirteenth Street, Columbus, GA 31901; Paul J. Phelps, **SAWICKI & PHELPS**, 5758 Blackshire Path, Inver Grove Heights, MN 55076; R. Brent Irby, **IRBY LAW, LLC**, 2201 Arlington Avenue South, Birmingham, AL 35205, for plaintiff.

Douglas R. Boettge, Kelly Maxwell, Todd A. Noteboom, **STINSON LLP**, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402, for defendant.

Plaintiff Yasmin Varela, on behalf of herself and a putative class of similarly insureds in Minnesota who received a payment for the loss of a totaled vehicle from Defendant State Farm Mutual Automobile Insurance Company ("State Farm"), brings this action against State Farm, alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, violation of the Minnesota Consumer Fraud Act, and declaratory and injunctive relief. Varela's claims stem from an alleged illegal practice whereby State Farm reduces the contractual amount it owes insureds to take a "typical

negotiation" deduction when an insured is involved in an accident and State Farm declares their vehicle a total loss and pays out the actual cash value minus any deductible for the loss. State Farm moves to dismiss all claims.

Because Varela's breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment claims are foreclosed by the No-Fault Act's mandatory arbitration provision, the Court will grant State Farm's motion to dismiss these claims. The Court will also dismiss the declaratory and injunctive relief claims as redundant. However, because Varela has alleged sufficient facts to support her claim for violation of the Minnesota Consumer Fraud Act and such claim is not limited by the No-Fault Act or the insurance policy's one-year time period provision, the Court will deny State Farm's motion as to this claim.

## BACKGROUND[1]

### I. FACTUAL BACKGROUND

State Farm, a nationwide automobile insurance company, provides auto coverage to insureds throughout Minnesota through its "State Farm Car Policy Booklet," which provides the terms and conditions of coverage. (Compl. ¶¶ 1, 15, Apr. 15, 2022, Docket No. 1.) Varela is a Minnesota resident who contracted with State Farm for auto insurance at all relevant times. (*Id.* ¶ 14.) Under the State Farm Car Policy Booklet, when a

---

[1] For the purposes of this motion to dismiss, the Court takes Varela's factual allegations as true. *See Cormack v. Settle-Beshears*, 474 F.3d 528, 531 (8th Cir. 2007).

policyholder files a claim for loss caused to a covered vehicle, State Farm may either (1) pay the cost to repair the vehicle minus any deductible, or (2) pay the vehicle's pre-accident "actual cash value" minus any applicable deductible. (*Id.* ¶ 17.)  In the event that a vehicle is a "total loss," meaning the cost of repairs would exceed the vehicle's value, State Farm pays the actual cash value of the vehicle, minus any applicable deductible. (*Id.* ¶ 18.)  The contract does not define "actual cash value." (*Id.* ¶ 19.)

On or about January 6, 2021, Varela's insured vehicle, a 2013 Hyundai Elantra GLS 4D Sedan, was deemed a "total loss." (*Id.* ¶ 14.)  As a result, Varela filed a claim. (*Id.* ¶ 21.)  On or about January 7, 2021, State Farm determined that Varela's vehicle was covered and exercised its option to pay out the actual cash value. (*Id.*)  To determine the actual cash value of Varela's vehicle, State farm used an Autosource valuation report prepared by a contracted third-party vendor, Audatex. (*Id.* ¶ 22.)  Audatex uses a software system to calculate the value of total loss vehicles by identifying the price of comparable vehicles listed for sale online in the relevant market. (*Id.* ¶¶ 23–24.)  The report then adjusts those comparable vehicle prices to account for differences in equipment, mileage, and vehicle configuration. (*Id.* ¶ 24.)  State Farm then further downward adjusts that value to account for "typical negotiations."[2] (*Id.* ¶ 25.)

---

[2] The "typical negotiation" deduction does not seem to be common in the industry.  Varela asserts that State Farm instructs Audatex as to what specific data to include in the report as the basis for the valuation, including whether to apply a "typical negotiation" deduction to comparable vehicles.  State Farm does not have this deduction applied in all states. (*Id.* ¶ 46.)

In Varela's case, Audatex identified four comparable vehicles, and State Farm used that information to determine the value of her 2013 Hyundai Elantra GLS. (*Id.* ¶¶ 21, 25.) State Farm applied "typical negotiation" deductions ranging between $639 and $720, which accounted for an 8% to 9% downward deduction from the vehicles' listing price. (*Id.* ¶¶ 26, 29.)

Varela maintains that this downward deduction is arbitrary, invalid, and baseless. State Farm does not speak with any car dealers who it represents would agree to a downward price negotiation, such negotiation deductions do not reflect market realities,[3] the insurance policy does not include a "typical negotiation" deduction, and such deduction is not authorized under Minnesota's insurance statutes and regulations. (*Id.* ¶¶ 26-29.) Further, this deduction is buried at the back of the valuation report in an effort to obscure it, and the report generated by Audatex does not itemize the deduction from

---

Similarly, Audatex's primary competitor in provided valuation reports to insurance companies does not apply these "typical negotiation" deductions. (*Id.* ¶ 47.)

[3] Varela asserts that State Farm's typical negotiation deduction does not reflect market realities that dealers' list prices "on the internet are priced-to-market … without being inflated above market value to reflect intense competition in the context of internet pricing and comparison shopping." (*Id.* ¶ 35.) Thus, it is "extremely rare" that car dealers will sell a vehicle for less than the online listed price and it is far more likely that a given vehicle will be sold for more than its listed price. (*Id.* ¶¶ 36–39.) Varela maintains that State Farm knows these market realities because it has access to this data, but despite this knowledge, State Farm "systematically and improperly represents that every single vehicle—every single total loss claim—is likely to be sold for a flat percentage less than its listed online price." (*Id.* ¶ 40.)

the listed price. (*Id.* ¶ 30.) This requires the insured to make calculations to determine how much was deducted. (*Id.* ¶¶ 30–31.)

For Varela, the valuation report used these "typical negotiation" deductions to reduce the value of each comparable vehicle by 8%. (*Id.* at 33.) Consequently, this reduced Varela's recovery under her policy and her ultimate payment from State Farm by $669.75. (*Id.*)

## II. PROCEDURAL HISTORY

Varela brought this putative class action against State Farm on April 15, 2022. (*See generally* Compl.) Varela asserts that State Farm's improper scheme and uniform business practice of using "typical negotiation" deductions to undervalue total loss claims is not authorized by the policy or Minnesota law. (*Id.* ¶ 49.) The policy requires State Farm to pay "actual cash value" of total loss minus only the deductible, so the "typical negotiation" deduction is therefore an artificially low market value of the vehicle and resulting settlement amount. (*Id.* ¶ 50.) Additionally, Minnesota's total loss regulation, Minn. Stat. § 72A.201, subd. 6, provides how actual cash value should be calculated. Since State Farm included the "typical negotiation" deduction, it did not base its payment on costs of comparable vehicles actually available in the local area. This practice, Varela argues, violates the regulation by guessing and speculating, with no supporting or verifiable data, what a comparable vehicle may sell for at some point in the future. (*Id.* ¶¶

51–55.) Varela contends that State Farm breached its contract with customers by violating Minnesota's regulations. (*Id.* ¶ 56.)

Varela brings five causes of action. First, she claims breach of contract because State Farm breached its duties to Varela and the putative class by applying the "typical negotiation" deduction to total loss claims. (*Id.* ¶¶ 71–90.) Second, she claims breach of the covenant of good faith and fair dealing because State Farm exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties. (*Id.* ¶¶ 91–97.) Third, she alternatively claims unjust enrichment because State Farm profits from the "typical negotiation" deduction. (*Id.* ¶¶ 98–105.) Fourth, Varela claims violation of the Minnesota Consumer Fraud Act ("MCFA") because State Farm knowingly and intentionally misrepresents, omits, conceals, and fails to disclose material facts regarding its application of the "typical negotiation" deduction. (*Id.* ¶¶ 106–121.) Lastly, she brings claims for declaratory and injunctive relief because State Farm's unlawful scheme and uniform business practice of applying "typical negotiation" deductions are ongoing. (*Id.* ¶¶ 122–125.)

Varela seeks (1) a declaration on behalf of herself and the Class that State Farm's application of "typical negotiation" deductions violates State Farm's standard form policy and Minn. Stat. § 72A.201, subd. 6; (2) monetary damages; (3) restitution or disgorgement

of ill-gotten gains; (4) injunctive or equitable relief; and (5) costs and fees. State Farm has moved to dismiss Varela's claims. (Def. State Farm Mot. to Dismiss, Docket No. 16.)

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION

As a preliminary matter, State Farm argues that Varela's claims are subject to mandatory, binding arbitration because, at its core, the case is a dispute over the actual cash value of Varela's vehicle and the insurance policy and Minnesota law provides that arbitration is required for comprehensive or collision damage coverage when the dispute is $10,000 or less. The Court must therefore first consider if it has subject matter jurisdiction, or if these claims must be arbitrated.

#### A. Applicable Law

Whether an arbitration provision is enforceable is a matter of federal law. *See Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 179 (3d Cir. 1999) ("Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law."). The Federal Arbitration Act ("FAA") requires enforcement of a contractual arbitration provision. The Act, in relevant part, states:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (emphasis in original).

Similarly, Minnesota's No–Fault Act requires all claims related to comprehensive or collision damage coverage that are under $10,000 be submitted to binding arbitration. Minn. Stat. § 65B.525, subd. 1; *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 800 (Minn. 2004) (holding that the No–Fault Act deprives district courts of subject matter jurisdiction over claims for comprehensive benefits under $10,000).

**B. Analysis**

Varela asserts that her claims are not arbitrable because they sound in fraud—meaning that they concern the fraudulent and legally impermissible practice of taking the deduction—not the unfairly reduced actual cash value. However, it is clear that Varela's claims concern both the **practice** of applying the "typical negotiation" deduction and the **actual reduction** of the actual cash value. As such, her claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment come under the purview of the mandatory arbitration requirement.

In *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, the Minnesota Supreme Court explained that Minnesota Statutes § 65B.525, subdivision 1, mandates that all disputes over comprehensive coverage "in an amount of $10,000 or less" must be submitted to

-8-

mandatory binding arbitration. 683 N.W.2d at 800. The statute thereby deprives district courts of subject matter jurisdiction over a certain type of dispute—claims for comprehensive benefits of $10,000 or less. *Id.* (citing *Olson v. Am. Family Mut. Ins. Co.,* 636 N.W.2d 598, 604 (Minn. Ct. App. 2001) (noting district courts do not have jurisdiction over claims of "no-fault benefits")). Glass Service Company asserted that the insurance company **paid it** less than the amounts stated on its invoices and the **practice** of paying out a reduced amount was contrary to the requirements of the insurance policy. *Id*. at 796–97. The Minnesota Supreme Court determined its claims were subject to arbitration.

Similarly, Varela asserts that State Farm has a **practice** of systematically underpaying the actual cash value of its insureds totaled vehicles by applying a typical negotiation deduction. The alleged percentage reduction directly relates to the **amount** State Farm paid for the value of Varela's vehicle. In fact, Varela makes clear that "the improper 'typical negotiation' deductions reduced her ultimate payment from State Farm by $699.75." (Compl. ¶ 33.) Because State Farm is contractually obligated to pay out actual cash value, Varela's claims necessarily concern comprehensive benefits and is subject to arbitration.

That these claims are subject to arbitration is further supported by relevant case law. In *Olson v. American Family Mut. Ins. Co.*, the plaintiffs sued their insurer under several common-law and statutory theories, alleging that the insurer improperly charged

some insureds over the age of 65 for no-fault wage-loss coverage that, by law, the insureds could not receive under most circumstances. 636 N.W.2d at 598–99.. The insurer challenged the denial of its motion to dismiss, arguing that the district court lacked subject-matter jurisdiction because respondents sought mandatory premium reductions, and these premium reductions were "no-fault benefits" subject to mandatory arbitration under Minn. Stat. § 65B.525, subd. 1 (2000). *Id.* The court held that the plaintiffs' claims were not "no-fault benefits" subject to arbitration because the plaintiffs sought damages for improperly charged or overpaid premiums, rather than compensatory benefits payments pursuant to the insurance policy. *Id.* at 602. Additionally, the plaintiffs were not seeking comprehensive/collision damage coverage because plaintiffs did not allege that any collision had taken place. *Id.*

Unlike in *Olson*, Varela **is** seeking compensatory benefits payments and/or collision damage coverage. Varela alleges that a collision took place and she sought to recoup her full benefits under her insurance contract. Because the actual cash value under Varela's policy is both a compensatory benefit payment and part of collision damage coverage, it follows that the payout of actual cash value is a benefit contemplated by the No-Fault Act subject to mandatory arbitration.

The Court further finds that Varela is mandated to bring her breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment claims before an arbitration panel. *See Laysar, Inc. v. State Farm Mut. Auto Ins. Co.*, No. 04-4584,

2005 WL 2063929, at *1 (D. Minn. Aug. 25, 2005) (holding that a plaintiff autoglass repair company asserting breach of contract claims against State Farm, in addition to claims for consumer fraud, deceptive trade practices, and false advertising, was subject to mandatory arbitration). However, claims alleging broad consumer fraud are generally not subject to the No-Fault Act's arbitration mandate. *See Liberty Auto Glass, Inc. v. Allstate Fire & Cas. Ins. Co.*, No. 06-4491, 2007 WL 1582879, at *1, 3 (D. Minn. May 30, 2007); *Laysar, Inc.*, 2005 WL 2063929, at *2 (noting that there may be subject matter jurisdiction where a claim could " cover every automobile policy sold by State Farm regardless of whether the insured ever filed a claim").

In sum, Varela's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment are subject to mandatory, binding arbitration. Thus, the Court will grant State Farm's motion to dismiss on these claims because it lacks subject matter jurisdiction. While Varela's fifth cause of action for declaratory and injunctive relief does not fall under the arbitration mandate, the Court will dismiss it as duplicative to Varela's prayer for relief. However, Varela's claim under the Minnesota Consumer Fraud Act is not subject to the No-Fault Act's arbitration provision. Accordingly, the Court will maintain jurisdiction over and consider that claim.

## II. RULE 12(B)(6) FAILURE TO STATE A CLAIM

Having found subject matter jurisdiction on Varela's consumer fraud claim based on a violation of the Minnesota Consumer Fraud Act, the Court turns to whether Varela has adequately stated a claim.

### A. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint

"does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B. Analysis

#### 1. One Year Suit Limitation Provision

As a preliminary mater, State Farm argues that Varela's Complaint must be dismissed for failure to state a claim because the policy contains a provision requiring her to bring legal action within one year immediately following the fate of the accident or loss. Since she brought the action some sixteen months after the date her vehicle was declared a total loss, State Farm claims that her right to bring the action expired. Varela counters that State Farm's time limitation defense is unreasonable when compared to Minnesota's six-year statute of limitations and because the limitation has no regard for when Varela discovered her claim, State Farm had superior bargaining power, and the provision was inconspicuously buried at the end of the form policy.

Minn. Stat. § 541.05, subd. 1(1) (2022) proscribes a 6-year statute of limitations for all contract actions. When considering whether the parties to an insurance contract can modify the statutorily prescribed limitations period, the Minnesota Supreme Court has held that absent a specific statute to the contrary, "the parties may limit the time within which an action may be brought to a period less than that fixed by the general statutes of limitation provided the limitation is not unreasonably short." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 650 (Minn. 1986) (internal quotations

omitted).  Such provisions, however, are not generally favored and are strictly construed against the party invoking them. *Id.* at 651..  Whether a contractual limitation is reasonable or not "is to be decided on a case-by-case basis, looking at the particular facts of each case." *Id.*  Moreover, an insurer can be estopped from asserting a time limitation contained in an insurance policy when the facts show that it would be "unjust, inequitable, or unconscionable" to do so*.  L & H Transp., Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn. 1987) (internal quotation omitted).

Varela filed the Complaint four months after the one-year limitation period and she bases this delay, in part, on the fact that she did not discover State Farm's misrepresentations related to the "typical negotiation" deduction until much later. Specifically, Varela alleges that when State Farm paid out the actual cash value for her totaled vehicle, it did not disclose that it had made such a deduction and made misleading statements about how State Farm determines the actual cash value.  She further alleges that the settlement letter State Farm provided in January 2021 omitted any mention of this deduction and that the valuation report used to calculate her car's actual cash value was not provided at the time State Farm settled her claim and was only provided when her attorney requested it in April 2022.  Varela alleges that the valuation report does not itemize the deductions taken and the "typical negotiation" deduction can only be discovered by calculating figures buried in the report.

-14-

Thus, the central premise of Varela's fraud allegation is that, in determining actual cash value of a total loss vehicle, State Farm omits material facts from its insureds and fails to explain the systematic reduction of the actual cash value by approximately eight to nine percent. Moreover, it is clear that State Farm is a more sophisticated party with superior bargaining power. *See Drew Agency, Inc.*, 403 N.W.2d at 226 n.1 (analyzing the reasonableness of a contract limitation in light of particular facts of each case, including the sophistication of the parties). Taking these allegations as true and drawing all reasonable inferences in Varela's favor, the Court is persuaded that the one-year limitations period is unreasonable as to the fraud claim.[4] As such, the Court will find that under these particular circumstances and in relation to Varela's fraud claim, the policy's one-year limitations clause is not enforceable.

### 2. Violation of the Minnesota Consumer Fraud Act

Turning to the substance of Varela's claim, the Minnesota Consumer Fraud Act ("MCFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise,

---

[4] State Farm asserts that the one-year limitations period applies equally to all of Varela's claims. However, since the Court will grant State Farm's motion as to the breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and declaratory and injunctive relief claims, the Court declines to reach the issue of whether these claims are also barred by the time limitation.

whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1. The language of the statute establishes that, to state a claim that the substantive statute has been violated, the plaintiff need only plead that the defendant engaged in conduct prohibited by the statute. *See Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001). The defendant must intend that its conduct be relied on, but allegations that the plaintiff actually relied on the defendant's conduct are not required. *Id.* However, while a plaintiff does not have to plead individual consumer reliance under the MCFA, there must be some "causal nexus" between the alleged damages and the defendant's wrongful conduct. *Grp. Health*, 621 N.W.2d at 13–15.

A cause of action under the MCFA requires that plaintiffs establish (1) a public benefit, and (2) a misrepresentation sufficient to violate the statute. *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1016 (D. Minn. 2012). A cognizable misrepresentation under the statute includes both an affirmative misrepresentation of a material fact or concealing or omitting disclosure of a material fact that the defendant had a duty to disclose, also known as fraudulent omission. *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp*, 850 N.W.2d 682, 695 (Minn. 2014).

To prevail on a fraudulent omission claim in Minnesota, the plaintiff must show that the defendant had a duty to disclose the omitted information. *Id.* at *CVS* 695–96. At common law, "one party to a transaction has no duty to disclose material facts to the other party." *Id.* at 695. But three special circumstances could trigger a duty to disclose:

(1) if one party "has a confidential or fiduciary relationship" with the other party; (2) if one party "has special knowledge of material facts" to which the other party "does not have access;" and (3) if one party speaks, they "must say enough to prevent the words communicated from misleading" the other party.  *Id.*

Here, State Farm asserts that the Court should dismiss Varela's Minnesota Consumer Fraud Act claim because she does not identify a duty to disclose or any actionable misrepresentation, and the claim provides no public benefits.  Varela asserts that she alleges that State Farm had actual knowledge that its conduct was fraudulent— it knew that the "typical negotiation" deductions were not supported by the UCPA, market conditions, or sales prices for vehicles.

State Farm points to *Jaskulske* to support its position.  There, the plaintiff argued that State Farm owed him a duty to disclose because they have specialized knowledge of material facts.  *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-869, 2014 WL 5530758, at *5 (D. Minn. Nov. 3, 2014).  The Court held that for the specialized-knowledge circumstance to trigger a duty to disclose, the plaintiff must allege that the defendant had "actual knowledge of fraudulent activities."  *Id.*  Here, State Farm argues that Varela's argument fails under *Jaskulske*.

However, *Jaskulske* is distinguishable because Varela's Complaint expressly states that State Farm had direct knowledge that its "typical negotiation" practice was against market realities and not authorized by the policy or by Minnesota law.  Varela alleges that

-17-

State Farm knew of this fraudulent conduct; that it was taking a typical negotiation deduction that was against the insurance policy's express term to pay out actual cash value. *See CVS Caremark Corp.*, 850 N.W.2d at 697–98 (holding that pharmacies had no duty to disclose prescription-drug acquisition costs under a specialized-knowledge theory because they did not actually know of any fraudulent conduct). At this stage, a question remains as to whether State Farm in fact had actual knowledge of fraudulent activities. However, Varela has sufficiently pleaded the specialized-knowledge circumstance giving rise to a duty to disclose to survive State Farm's Motion to Dismiss.

State Farm's claim that Varela has not adequately pled an affirmative misrepresentation can also be dispelled. Varela indeed alleges an affirmative misrepresentation: State Farm's policy expressly states that it will pay out actual cash value if an insured vehicle is determined to be a total loss. This is a misrepresentation because State Farm actually pays out less than actual cash value by deducting a "typical negotiation" fee.

Additionally, State Farm argues that Varela cannot plausibly plead causation because she admits receiving the valuation report that explained the purportedly concealed "typical negotiation" deductions before she settled her claim with State Farm. However, Varela has adequately pled a causal nexus in State Farm's behavior and Varela's harm: State Farm's fraudulent "typical negotiation" practice and the subsequent lack of full benefit of State Farm's contractual promise to pay the actual cash value to its insured.

Lastly, private enforcement of the MCFA is limited to those claimants demonstrating their cause of action benefits the public. *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). In evaluating whether a Complaint sufficiently alleges a public benefit, "courts assess both the form of the alleged misrepresentation and the relief sought by the plaintiff." *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 986 (D. Minn. 2001). Here, Valera alleges that the "typical negotiation" deduction goes beyond a one-on-one transaction because State Farm systematically engages in this type of settlement. Further, Varela requests declaratory and injunctive relief in addition to monetary damages. This relief, if granted, would have far reaching consequences beyond just those insureds whose vehicle is declared a total loss. For example, if it is ultimately determined that the practice is legally impermissible, State Farm may be required to change all its contracts with insureds. Varela's allegations at this stage thus satisfy the public benefit requirement.

## CONCLUSION

Because Varela's violation of Minnesota Consumer Fraud Act claim is not under the purview of the No-Fault Act's arbitration mandate, is not time-barred by the policy's limitation period, and is adequately pled, the Court has subject matter jurisdiction over the fraud claim and will deny State Farm's motion to dismiss that claim. Because Varela's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment are subject to mandatory, binding arbitration under the No-Fault Act,

the Court lacks subject matter jurisdiction over these claims and will grant the motion to dismiss as to them. Additionally, because the declaratory and injunctive relief claim is duplicative of the relief sought, the Court will also dismiss it.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 16] is **DENIED** in part and **GRANTED** in part as follows:

    a. The Court **DENIES** the Motion to Dismiss on Count 4 (Violation of the Minnesota Consumer Fraud Act); and

    b. The Court **GRANTS** the Motion to Dismiss on Count 1 (Breach of Contract); Count 2 (Breach of the Covenant of Good Faith and Fair Dealing); Count 3 (Unjust Enrichment); and Count 5 (Declaratory and Injunctive Relief).

DATED: February 13, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge